******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion. In no event will any such motions be accepted before the "officially released" date.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the electronic version of an opinion and the print version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest print version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears on the Commission on Official Legal Publications Electronic Bulletin Board Service and in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

STATE OF CONNECTICUT *v.* RANDY DIXON
(SC 19349)

Rogers, C. J., and Palmer, Zarella, Eveleigh, Espinosa and Robinson, Js.

*Argued March 16—officially released September 8, 2015*

*Emily Wagner*, assistant public defender, for the appellant (defendant).

*Laurie N. Feldman*, special deputy assistant state's attorney, with whom, on the brief, were *John Smriga*, state's attorney, and *Joseph Corradino*, senior assistant state's attorney, for the appellee (state).

*Opinion*

ESPINOSA, J. The defendant, Randy Dixon, was convicted, following a jury trial, of murder in violation of General Statutes § 53a-54a (a). On appeal,[1] the defendant claims that: (1) the trial court had an obligation to provide, sua sponte, a jury instruction on the risk of misidentification by an eyewitness pursuant to *State* v. *Ledbetter*, 275 Conn. 534, 579, 881 A.2d 290 (2005), cert. denied, 547 U.S. 1082, 126 S. Ct. 1798, 164 L. Ed. 2d 537 (2006); (2) the scope of the trial court's inquiry into the allegation of juror bias violated his constitutional right to a fair trial by an impartial jury because the court only interviewed the foreperson and one juror, J.S., about whether they had safety concerns following a court attendee's contact with J.S., and the safety concerns could have biased the jury against him[2]; and (3) his exclusion from the hearing concerning possible juror bias was a violation of his constitutional rights to be present at a critical stage of the proceedings, to counsel, and to be presumed innocent. We affirm the judgment of the trial court.

The jury reasonably could have found the following facts. At approximately 1 a.m. on December 3, 2010, the victim, Lawrence Acevedo, was visiting with friends on Capitol Avenue in Bridgeport. He was on a second floor porch when a car playing loud music pulled up and stopped across the street. The victim shouted at the car to turn down the volume of the music and the defendant, who was driving the vehicle, responded, "I'll be right back," and sped away.

A few minutes later, the car returned, still playing loud music. The victim ran downstairs toward the car and the defendant began shooting at the victim. During a break in the shooting, the victim ran to the driver's side of the car and punched the window, unsuccessfully trying to break it. He then went around the back of the car to the passenger side and the defendant fired a few more shots at him. To avoid the shots coming through the vehicle, the victim ducked behind the car.

The defendant got out of the car and confronted the victim. The defendant shot the victim in the knee and the victim fell. The defendant then stood over the victim and again shot him, before getting into his car and driving away. The autopsy on the victim showed that he bled to death as a result of multiple gunshot wounds. The court rendered judgment in accordance with the jury's verdict, and the defendant appealed. Additional facts will be set forth as necessary.

I

We first consider the defendant's claim that the trial court had an obligation to provide sua sponte a jury instruction on the risk of misidentification by an eyewitness pursuant to *Ledbetter*. The following additional facts are relevant to this claim. In the course of the

investigation into the victim's murder, the police received information that Ervin Moses, a resident of Capitol Avenue, had witnessed the murder. The police asked Moses to come to the police station, which he did, and, while there, he was shown a photographic array and asked to make an identification of the perpetrator. It is undisputed that "[t]he officer who interviewed . . . Moses began the identification procedure by telling [him] that the perpetrator may or may not be in the photo[graphic] array . . . ." Moses identified the defendant from a photographic array of suspects.

The defendant's trial began on May 9, 2012. On Friday, May 11, 2012, the state informed the court that it would expect to rest its case on the following Monday, May 14, 2012. The court considered holding the charging conference that morning, May 11, 2012, but defense counsel stated that he needed the weekend to do some research. The court and both sides then agreed that the charging conference would take place on May 14, 2012, with the charge to the jury taking place on Tuesday, May 15, 2012.

On May 14, 2012, the charging conference was held and the court subsequently outlined what transpired at that conference on the record. The court invited counsel to add anything that it had missed. The court stated: "There will be a charge on identification and . . . I gave my charge to each of the attorneys to review if they had any questions on it." After the court finished summarizing the charging conference, the court asked if either counsel had anything to add. Defense counsel responded, "Nothing to add, Your Honor."

On Tuesday, May 15, 2012, the court gave the charge to the jury. Prior to bringing the jury into the courtroom, the court asked both counsel if they were ready and defense counsel replied, "Yes, Your Honor." In the jury charge, the court provided an instruction on identification of the defendant by witnesses and included factors that the jury should consider in determining the reliability of a witness' identification. After the court finished its instructions to the jury, defense counsel stated that he had "no exceptions."

It is undisputed that the defendant did not request an instruction regarding misidentification pursuant to *Ledbetter*, and that the court did not give such an instruction. Accordingly, we conclude that this issue was not preserved because the defendant did not raise it in the trial court. "This court is not bound to consider claims of law not made at the trial. . . . Th[is] serve[s] to alert the trial court to potential error while there is still time for the court to act. . . . [B]ecause the sine qua non of preservation is fair notice to the trial court . . . the determination of whether a claim has been properly preserved will depend on a careful review of the record to ascertain whether the claim on appeal was articulated below with sufficient clarity to place

the trial court on reasonable notice of that very same claim." (Internal quotation marks omitted.) *State* v. *Taylor G.*, 315 Conn. 734, 769–70, 110 A.3d 338 (2015).

In *Ledbetter*, we set forth the rule that courts must "incorporate an instruction in the charge to the jury, warning the jury of the risk of misidentification, in those cases where: (1) the state has offered eyewitness identification evidence; (2) that evidence resulted from an identification procedure; and (3) the administrator of that procedure failed to instruct the witness that the perpetrator may or may not be present in the procedure." *State* v. *Ledbetter*, supra, 275 Conn. 579. We stated that this instruction is not constitutionally required; id., 577; a point which the defendant in the present case acknowledges. Instead, the requirement that a *Ledbetter* instruction be given under the appropriate circumstances is a prophylactic rule that we established to "mitigat[e] the risks of misidentification in the courts of this state." Id.

In the present case, the defendant has conceded that he did not request that the trial court give a *Ledbetter* instruction. We conclude, therefore, that the defendant did not preserve this claim.[3] Because the present case is not one in which "the administrator of that procedure failed to instruct the witness that the perpetrator may or may not be present in the procedure"; id., 579; *Ledbetter* would not apply and the court had no obligation to give sua sponte the *Ledbetter* instruction.

II

We next consider the defendant's claim that the scope of the trial court's inquiry into the allegations of juror bias violated his constitutional right to a fair trial by an impartial jury. The following additional facts are necessary for our resolution of this claim. The defendant's trial began on May 9, 2012. When the jurors were excused for lunch, the court stated that they were not to speak about the case with anyone and that if anyone tried to talk to them, they should report it immediately. The court reiterated this warning throughout the trial and deliberations. The jury began deliberating on May 15, 2012. On May 16, 2012, the court received notification from the jury that it could not reach a unanimous decision and inquired about what it should do next. The court called the jurors into the courtroom and told them that it is "not unusual for jurors not to reach a unanimous verdict the first day." The court excused the jurors for lunch and deliberations continued that afternoon.

The following day, May 17, 2012, the court received further correspondence from the jury that it could not reach a unanimous verdict. The court called the jury into the courtroom and provided it with additional instructions, encouraging each juror to listen to each juror's opinion with an open mind. Later that day, the

jury sent a third note to the court stating that it could not reach a unanimous verdict. In response, the court gave the jury further instructions, and then dismissed it for the day, with the instruction that it would return to deliberations in the morning.

On May 18, 2012, the court stated that an issue had arisen which required it to conduct an in camera hearing. The court stated that the hearing would include defense counsel, the prosecutor, the court, and the clerk. In the hearing, the court stated that it had received a note from the jury, which read, "One of the court attendees approached/spoke to one of the jur[ors] at a public place yesterday, 5/17 late night. The one jur[or] told that individual . . . the jury cannot speak to anyone. Is this an issue? *We have safety concerns.*" The court also noted that there had been animosity in the courtroom between attendees supporting the defendant and attendees there on behalf of the victim. The court then stated that the note had not been signed by the foreperson and that the first step in the hearing would be to bring in the foreperson.

After announcing that course of action, the marshal indicated that the jurors were knocking on the door. The jury had delivered a note stating, "We the jury have reached a unanimous decision. How should we proceed?" The court expressed concern that the contact between a court attendee and a juror could have influenced the verdict and decided that the court should interview each of the jurors. After discussion, both sides agreed that it would be best to determine from the note's author, before the verdict was announced, if the other jurors knew about the contact. Both sides raised concerns about the risk of the court tainting the jury if the other jurors were unaware of the contact and the note.

The court first brought in the foreperson, K.S., who indicated, under oath, that J.S. was the author of the note and that she had shared with the rest of the jurors that she had contact with a court attendee. K.S. stated that the jurors pondered what to do about the contact and decided to inform the court after remembering the court's instruction to inform it if anyone contacted any of them. K.S. then stated that the note about the contact had no effect on his vote in the verdict. When the court asked K.S. if he thought that the contact affected other jurors' votes in the verdict, he responded, "I'm very observant and . . . we went on deliberating and I kind of just tuned into the different comments that are being made and it did not. The only thing that was even prior to her letting us know, is just a safety issue and that may have prompted her to actually say it." K.S. then indicated that the jurors had been discussing the types of safety issues that might arise when serving on a jury in a murder case. K.S. then described the nature of the contact between J.S. and the court attendee as J.S. had

described it.

The court next interviewed J.S., also under oath. She described the contact she had with the court attendee as follows: "After I left here, my phone got wet here, so I went to Trumbull Mall AT&T and I'm talking to the lady fixing my phone . . . and I happened to glance that way, and there was a black man standing at the corner. He approached me and he said hi. I said hi, and then I say to him, do I know you? He said, no, but I know you. I say, really? He say, yeah, you're one of the jurors. And I said to him, you know I can't be talking to you. I turned around and continued to look at the lady I was talking to. He said, bye, and walked away." J.S. then assured the court that the contact did not affect her verdict and that she was raising the issue only because she was instructed to inform the court of any contact. She said that she did not feel afraid after the contact and that safety had not been a concern of hers during the trial. She did say, however, that "the other people feel they a little scared, the same way I got seen and this guy approach me at the mall, maybe one of them can be approached."

J.S. further explained that the jurors had discussed the contact and written the note to the court about it but were uncertain whether to send it out. They left it on the table while they continued to deliberate. After reaching a verdict, they sent out the note about the contact. J.S. also stated that none of the other jurors expressed "out loud" anything that indicated that her contact with the court attendee had influenced his or her vote.

The court proceeded to interview under oath each of the remaining jurors. Each juror stated that, although he or she was aware of the contact between J.S. and the court attendee, it did not influence his or her vote in reaching the verdict and that it did not seem to influence the votes of the other jurors. Several jurors also stated that it did not affect their ability to be fair and impartial. After the court questioned each juror, both the prosecutor and defense counsel were given the opportunity to ask any additional questions.

Having heard from all of the jurors, the court then heard arguments in open court as to whether the court could make a finding that there had been no violation of the integrity of the jury. The prosecutor argued that the information received during the hearing confirmed that the jury was impartial and that J.S.'s contact with the court attendee did not affect the verdict. The prosecutor then requested that the court receive the verdict. Defense counsel moved for a mistrial, arguing that the jury had reported three different times that it could not reach a unanimous verdict, including at the end of the day prior to learning about the contact, and then, after hearing about the contact, it quickly reached a verdict. He argued that the fact that the jury had been dead-

locked, combined with the assertion that there had been some safety concerns by members of the jury, indicated that the jury seems to have been influenced by the contact in reaching its verdict.

The court denied the defendant's motion for a mistrial because the conversation between J.S. and the court attendee was brief and because "it was clear to the court that [the jurors] were not influenced by the minimal contact . . . ." The court then called the jury into the courtroom to deliver its verdict.

On appeal, the defendant argues that the safety concerns expressed by the jurors could have biased their votes in reaching their verdict. The defendant contends that this claim was preserved by counsel's motion for a mistrial following the hearing into the contact. The state argues that the trial court properly exercised its discretion in setting the scope of the hearing. Assuming, without deciding, that the defendant preserved this claim with his motion for a mistrial, we conclude that the court did not abuse its discretion when it established the form and scope of the questions that it used to inquire of the jurors whether the contact between J.S. and the court attendee affected their verdict, to determine any safety concerns that the jurors had, and to confirm that all jurors could return a fair and impartial verdict.

We review claims about the form and scope of an inquiry into possible juror bias for abuse of discretion. *State* v. *Brown*, 235 Conn. 502, 529, 668 A.2d 1288 (1995). "[A] trial court must conduct a preliminary inquiry, on the record, whenever it is presented with any allegations of jury misconduct in a criminal case, regardless of whether an inquiry is requested by counsel. Although the form and scope of such an inquiry lie within a trial court's discretion, the court must conduct some type of inquiry in response to allegations of jury misconduct. That form and scope may vary from a preliminary inquiry of counsel, at one end of the spectrum, to a full evidentiary hearing at the other end of the spectrum, and, of course, all points in between. Whether a preliminary inquiry of counsel, or some other limited form of proceeding, will lead to further, more extensive, proceedings will depend on what is disclosed during the initial limited proceedings and on the exercise of the trial court's sound discretion with respect thereto." (Footnote omitted.) Id., 526.

"We recognize that the trial judge has a superior opportunity to assess the proceedings over which he or she personally has presided . . . and thus is in a superior position to evaluate the credibility of allegations of jury misconduct, whatever their source. There may well be cases, therefore, in which a trial court will rightfully be persuaded, solely on the basis of the allegations before it and the preliminary inquiry of counsel on the record, that such allegations lack any merit.

In such cases, a defendant's constitutional rights may not be violated by the trial court's failure to hold an evidentiary hearing, in the absence of a timely request by counsel." (Citations omitted.) Id., 527–28.

"Potential juror bias is considered akin to other misconduct that similarly might affect a juror's impartiality . . . ." *State* v. *Osimanti*, 299 Conn. 1, 32, 6 A.3d 790 (2010). "With respect to allegations that a juror potentially may be biased, [e]ven where a juror has formed some preconceived opinion as to the guilt of an accused, a juror is sufficiently impartial if he or she can set aside that opinion and render a verdict based on evidence in the case. . . . Only where a juror has indicated a refusal to consider testimony and displayed evidence of a closed mind concerning [the] defendant's innocence can it be said that [the court] abused its discretion in refusing to [remove] a juror [from the panel]. . . . It is enough if a juror is able to set aside any preconceived notions and decide the case on the evidence presented and the instructions given by the court. . . . While we recognize that a juror's assurances that he or she is equal to the task are not dispositive of the rights of an accused . . . we are aware of the broad discretion of a trial judge which includes his determination of the credibility to be given a juror's statement in this context. . . .

"The trial court's assessment of the juror's assurances, while entitled to deference, must be realistic and informed by inquiries adequate in the context of the case to ascertain the nature and import of any potential juror bias. . . . The inquiry need not, however, be lengthy, so long as the questions, viewed in the context of the juror's answers, are adequate for the trial court to determine that the juror can indeed serve fairly and impartially. . . . The nature and quality of the juror's assurances is of paramount importance; the juror must be unequivocal about his or her ability to be fair and impartial." (Citations omitted; internal quotation marks omitted.) Id., 34–36.

In the present case, the defendant argues that the trial court abused its discretion by improperly placing on him the burden of demonstrating that he was deprived of his right to an impartial jury. As we have noted in previous cases, there is an inconsistency in our case law as to which party bears this burden. See, e.g., id., 38 n.32. As in previous cases, we decline to resolve this issue in the present case. Even if we were to assign the burden of proof to the state, the evidence supports the trial court's finding that the alleged juror bias did not deprive the defendant of his right to an impartial jury. The court conducted a hearing in which each juror was interviewed under oath. Both the prosecutor and defense counsel were present and the court solicited input from both as to how to conduct the inquiry. After the court asked its questions of each juror,

the court then provided counsel with the opportunity to ask any further questions they may have had.

In its questioning, the court took care to ensure that the jurors could be fair and impartial, despite the contact. The court asked whether the contact influenced each juror's vote in the verdict and each juror assured the court that it did not. Each juror also stated that knowledge of the contact did not seem to affect the votes of other jurors. Several jurors also indicated that the contact did not affect their ability to be fair and impartial in reaching their verdict.

The court also questioned K.S. and J.S. about safety concerns raised by the jurors. Both seemed to indicate that, although the jurors had raised questions about the safety issues involved in serving on a jury in a murder trial, none raised any specific concerns about this case in particular. Because the court conducted an inquiry upon learning of potential juror bias and determined that the contact did not affect the jurors' votes in the verdict, we conclude that the court did not abuse its discretion in the manner in which it conducted the hearing pursuant to *State* v. *Brown*, supra, 235 Conn. 526.

The defendant argues that we should exercise our supervisory authority to require a specific scope of questioning when there are concerns about juror bias due to fear, as we did in *State* v. *Santiago*, 245 Conn. 301, 338, 715 A.2d 1 (1998), where there were allegations of racial bias on the part of a juror. We stated in *Santiago* that, "[a]llegations of racial bias on the part of a juror are fundamentally different from other types of juror misconduct because such conduct is, ipso facto, prejudicial and because the judicial system is not exempt from the unfortunate reality of racial prejudice." (Footnote omitted.) Id., 336. Allegations of fear do not give rise to the same concerns about prejudice as those raised by allegations of racial bias and, therefore, an inquiry pursuant to *State* v. *Brown*, supra, 235 Conn. 526, is sufficient.

## III

Lastly, the defendant's third claim is that his exclusion from the hearing addressing possible juror bias was a violation of his constitutional rights to be present at a critical stage of the proceedings as required by due process, to counsel, and to be presumed innocent. The defendant acknowledges that defense counsel did not object to his exclusion from the hearing, and seeks review pursuant to *State* v. *Golding*, 213 Conn. 233, 239–40, 567 A.2d 823 (1989). The state argues that the trial court properly excluded the defendant from the hearing. We conclude that the hearing was not a critical stage of the proceedings, and, therefore, the defendant's due process right to be present was not violated by his exclusion from it.[4] We further conclude that the

defendant's right to counsel was not violated because the defendant was informed of the nature of the inquiry prior to its start and defense counsel was present at the hearing. We finally conclude that the defendant's right to be presumed innocent was not violated because the jury had reached its verdict prior to the commencement of the hearing and because there is no evidence that the defendant was excluded from the hearing due to safety concerns expressed by the jurors.

The following additional facts are relevant to this claim. On May 18, 2012, the court stated that an issue had arisen which required it to conduct an in camera hearing. The state placed on the record that the court had shared with it and defense counsel the reason for the hearing and both sides agreed as to who would be present. The court also ensured that the defendant had been informed of the information. The following colloquy then occurred:

"[The Prosecutor]: I understand [defense counsel] has had occasion to discuss all this information with his client who's been fully advised of the nature and scope of the inquiry.

"[Defense Counsel]: That is correct.

"The Court: Is that right . . . ?

"[The Defendant]: Yes.

"The Court: And you accept that, is that right, sir?

"[The Defendant]: Yes."

The court then directed the jury to stop deliberating. At the commencement of the hearing, the court acknowledged that the defendant was not present but that defense counsel was in attendance and that the defendant would have access to the transcript of the hearing.

Whether the defendant's constitutional rights were violated by his exclusion from the hearing presents a question of law and, accordingly, we exercise plenary review. See *State* v. *Lopez*, 271 Conn. 724, 731, 859 A.2d 898 (2004). Under *Golding*, "a defendant can prevail on a claim of constitutional error not preserved at trial only if all of the following conditions are met: (1) the record is adequate to review the alleged claim of error; (2) the claim is of constitutional magnitude alleging the violation of a fundamental right; (3) the alleged constitutional violation . . . exists and . . . deprived the defendant of a fair trial; and (4) if subject to harmless error analysis, the state has failed to demonstrate harmlessness of the alleged constitutional violation beyond a reasonable doubt. In the absence of any one of these conditions, the defendant's claim will fail. The appellate tribunal is free, therefore, to respond to the defendant's claim by focusing on whichever condition is most relevant in the particular circumstances." (Emphasis omitted; footnote omitted.) *State* v. *Golding*, supra, 213

Conn. 239–40; see *In re Yasiel R.*, 317 Conn. 773, 781, A.3d    (2015) (modifying third prong of *Golding*).

It is undisputed that a defendant has a constitutional right to be present at all critical stages of the trial. *United States* v. *Gagnon*, 470 U.S. 522, 526, 105 S. Ct. 1482, 84 L. Ed. 2d 486 (1985). "The constitutional right to presence is rooted to a large extent in the [c]onfrontation [c]lause of the [s]ixth [a]mendment . . . but . . . [that] right is protected by the [d]ue [p]rocess [c]lause in some situations where the defendant is not actually confronting witnesses or evidence against him." (Citation omitted.) Id. "In judging whether a particular segment of a criminal proceeding constitutes a critical stage of a defendant's prosecution, courts have evaluated the extent to which a fair and just hearing would be thwarted by [the defendant's] absence or whether his presence has a relation, reasonably substantial, to the [fullness] of his opportunity to defend against the charge." (Internal quotation marks omitted.) *State* v. *Lopez*, supra, 271 Conn. 732. "Thus, a defendant is guaranteed the right to be present at any stage of the criminal proceeding that is critical to its outcome if his presence would contribute to the fairness of the procedure." *Kentucky* v. *Stincer*, 482 U.S. 730, 745, 107 S. Ct. 2658, 96 L. Ed. 2d 631 (1987).

In the present case, the defendant's absence from the hearing did not affect the fairness of the inquiry and did not affect his ability to defend against the murder charge. Defense counsel spoke with the defendant prior to the hearing and was able to discuss with the defendant any concerns the defendant may have had or issues he wanted addressed at the hearing. During the hearing, defense counsel helped establish the manner in which the hearing would proceed and was provided with the opportunity to ask any questions of the jurors that the court did not ask, protecting the defendant's interests even further. Additionally, the defendant had access to a transcript of the hearing. There is nothing additional the defendant could have contributed that would have ensured a more just or fair hearing.

Further, the hearing had no impact on the defendant's ability to defend against the murder charge because it did not prevent the defendant from presenting his case. In fact, the jury had reached its verdict before the hearing began, and, thus, the defendant already had completed presenting his case. The matters discussed at the hearing had nothing to do with the defendant's ability to defend against the charge of murder and the outcome of the hearing did not prevent him, in any way, from fully presenting his defense.

The defendant relies on *Remmer* v. *United States*, 347 U.S. 227, 229–30, 74 S. Ct. 450, 98 L. Ed. 654 (1954), for the proposition that the defendant's presence is necessary at proceedings on jury impartiality.[5] In that case, the court stated that when there is an allegation

of juror impartiality, the court should hold "a hearing with all interested parties permitted to participate." Id., 230. The defendant cites no authority, and we have found none, which interprets this requirement to mean that the defendant himself must be present. We see no reason why the presence and participation of defense counsel would not be sufficient to protect the defendant's rights.

The defendant also argues that his exclusion from the hearing violated his constitutional right to counsel. We are not persuaded. A criminal defendant has an absolute constitutional right to representation by counsel. *Gideon* v. *Wainwright*, 372 U.S. 335, 344–45, 83 S. Ct. 792, 9 L. Ed. 2d 799 (1963). In the present case, the defendant discussed the contact between J.S. and the court attendee with defense counsel prior to the hearing, and he was able to discuss any questions he may have had or issues he wanted raised at the hearing. Further, as previously noted, defense counsel was present at the hearing, helped establish the manner in which the inquiry proceeded, and was provided the opportunity to ask questions of the jurors.

The defendant additionally argues that his exclusion from the hearing violated his constitutional right to be presumed innocent. The defendant argues that the court may have conducted the hearing without him because "it suspected that jurors feared [him] or believed it was unsafe to be a juror in his case . . . ." He further argues that the "jurors should have been cautioned not to draw any adverse inferences from the defendant's absence." Again, we are not persuaded. "The defendant's presumption of innocence until proven guilty is an axiomatic and elementary principle whose enforcement lies at the foundation of the administration of our criminal law." (Internal quotation marks omitted.) *State* v. *Skipper*, 228 Conn. 610, 621, 637 A.2d 1101 (1994), quoting *Coffin* v. *United States*, 156 U.S. 432, 453, 15 S. Ct. 394, 39 L. Ed. 481 (1895). In the present case, there is no reason to believe that the court excluded the defendant from the hearing due to safety concerns expressed by the jurors. Furthermore, any fear the jurors may have felt if the defendant had been present in the hearing would have been irrelevant because the jury had reached its verdict prior to the hearing and, therefore, had no effect on the verdict.

The judgment is affirmed.

In this opinion the other justices concurred.

[1] The defendant appealed from the judgment of conviction to this court, and we transferred the appeal to the Appellate Court pursuant to General Statutes § 51-199 (c) and Practice Book § 65-1. Thereafter, upon the motion of the state, we transferred the appeal to this court pursuant to § 51-199 (c) and Practice Book § 65-2.

[2] As to claims two and three, the defendant has alleged violations of state and federal constitutional rights, but he has failed to provide an independent analysis of the state claims as required by *State* v. *Geisler*, 222 Conn. 672, 684–85, 610 A.2d 1225 (1992). "We have repeatedly apprised litigants that we will not entertain a state constitutional claim unless the defendant has

provided an independent analysis under the particular provisions of the state constitution at issue. . . . Without a separately briefed and analyzed state constitutional claim, we deem abandoned the defendant's claim[s]. . . . Accordingly, we analyze the defendant's due process claim[s] under the federal constitution only." (Citation omitted; internal quotation marks omitted.) *Barros* v. *Barros*, 309 Conn. 499, 507 n.9, 72 A.3d 367 (2013).

[3] The state argues that the defendant waived his claim to the *Ledbetter* instruction, pursuant to *State* v. *Kitchens*, 299 Conn. 447, 10 A.3d 942 (2011), because defense counsel had a meaningful opportunity to review the proposed instructions on eyewitness identification, prior to the charge to the jury. Because this claim is not of a constitutional magnitude and, therefore, review under *State* v. *Golding*, 213 Conn. 233, 239–40, 567 A.2d 823 (1989), is unavailable, waiver, pursuant to *Kitchens*, is not implicated.

[4] We note that the Appellate Court has previously concluded that an in-chambers hearing on possible juror bias is a critical stage of the proceedings. See, e.g., *State* v. *Zapata*, 119 Conn. App. 660, 678, 989 A.2d 626 (concluding that defendant was excluded from critical stage of proceedings, but that constitutional violation was harmless beyond reasonable doubt), cert. denied, 296 Conn. 906, 992 A.2d 1136 (2010). To the extent that that Appellate Court authority is now in contradiction to our ruling in the present case, it is overruled.

[5] To the extent that the defendant argues that Practice Book §§ 44-7, 44-8 and 42-6 also require that the defendant himself be present, we are not persuaded. Practice Book § 44-7 explicitly provides that "[t]he defendant has the right to be present at the arraignment, at the time of the plea, at evidentiary hearings, at the trial, and at the sentencing hearing . . . ." Practice Book § 44-8 provides that the defendant may be absent from the trial or the sentencing if the defendant will be represented by counsel and, either waives the right to be present or is excluded from the courtroom because of his or her disruptive conduct. Further, Practice Book § 42-6 allows the defendant to be present when the jury is viewing a place or thing relevant to the trial in another location, but states that this right to be present can be waived by the defendant. None of these provisions require the presence of the defendant at a hearing conducted pursuant to *State* v. *Brown*, supra, 235 Conn. 526.