******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion. In no event will any such motions be accepted before the "officially released" date.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the electronic version of an opinion and the print version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest print version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears on the Commission on Official Legal Publications Electronic Bulletin Board Service and in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

DEVON TAYLOR *v.* COMMISSIONER
OF CORRECTION
(SC 19462)

Rogers, C. J., and Palmer, Eveleigh, McDonald, Espinosa and Robinson, Js.

*Argued November 14, 2016—officially released February 14, 2017*

*Peter Tsimbidaros*, assigned counsel, for the appellant (petitioner).

*Lisa A. Riggione*, senior assistant state's attorney, with whom, on the brief, were *Gail P. Hardy*, state's attorney, *James A. Killen*, senior assistant state's attorney, and *Marcia Pillsbury*, assistant state's attorney, for the appellee (respondent).

*Opinion*

EVELEIGH, J. In this certified appeal, the petitioner, Devon Taylor, appeals from the judgment of the Appellate Court affirming the denial of his amended writ of habeas corpus. See *Taylor* v. *Commissioner of Correction*, 154 Conn. App. 686, 688–89, 108 A.3d 238 (2015). On appeal, the petitioner claims that the Appellate Court incorrectly concluded that he had failed to meet his burden of demonstrating that the deficient performance of his trial counsel, Kenneth Simon, in responding to the trial court's treatment of a jury note had prejudiced the petitioner. Id., 721. We disagree with the petitioner and, accordingly, affirm the judgment of the Appellate Court.

The Appellate Court opinion sets forth the following relevant facts and procedural history. "On August 27, 1993, [Jay Murray, the victim] and Ronald Wightwood, [Murray's] companion, were attempting to purchase drugs [in Hartford]. They met the [petitioner] and indicated to him that they wanted cocaine. The [petitioner] and the victim discussed the purchase and the [petitioner] entered the victim's pickup truck and drove it to the vicinity of a car wash on Albany Avenue. The [petitioner] exited the truck and retrieved a plastic bag containing a white powdery substance, which he gave to the victim. After the victim sampled and rejected the substance, the [petitioner] drove the truck and its occupants to Milford Street. The [petitioner] left the truck but returned several minutes later and shot the victim with a revolver through the driver's side window of the truck. All of those events occurred in the presence of Wightwood. The police found $150 in the truck and also found the [petitioner's] fingerprints on the exterior and interior of the truck. . . . The victim later died in a hospital.

"The petitioner was charged with murder in violation of General Statutes [Rev. to 1993] § 53a-54a and criminal possession of a firearm in violation of General Statutes [Rev. to 1993] § 53a-217. In 1997, a jury found the petitioner guilty on both charges. The trial court . . . sentenced the petitioner to a total effective term of sixty years imprisonment. [The Appellate Court] affirmed the judgment of conviction on appeal. [*State* v. *Taylor*, 52 Conn. App. 790, 801, 729 A.2d 226 (1999)].

"Subsequently, the petitioner filed an amended petition for a writ of habeas corpus . . . . The amended petition contains four counts. Count one alleges that . . . Simon . . . provided ineffective assistance of counsel on the grounds that, inter alia, [he] failed (1) to introduce evidence to impeach the state's primary identification witness, Wightwood, (2) to adequately seek to suppress Wightwood's allegedly suggestive identification of the petitioner . . . (3) to investigate and introduce evidence to establish a third party culpa-

bility defense, (4) to impeach the expert opinion testimony of Kenneth Zercie, an employee at the state forensic laboratory, concerning fingerprint evidence, and (5) to object to the trial court's errors in its handling of a jury note. Count two broadly alleges that Glenn W. Falk, the petitioner's appellate counsel, provided ineffective assistance of counsel. Count three alleges that the trial court violated the petitioner's constitutional rights by providing an erroneous charge to the jury regarding the definition of the intent element of murder. Count four broadly and vaguely alleges that the petitioner's incarceration violates his . . . rights under the fifth and fourteenth amendments to the [United States] constitution and article first, § 8, of the Connecticut constitution. The respondent, the Commissioner of Correction, filed a return denying the petitioner's allegations in the amended petition and raising the special defense of procedural default with regard to the petitioner's claim in count three as to the trial court's instruction on the intent element of murder. The petitioner filed a reply denying the respondent's procedural default defense. Both parties then filed pretrial briefs.

"Following a trial to the [habeas] court, both parties filed posttrial briefs. Approximately seven months after the parties filed their posttrial briefs, the [habeas] court held a hearing wherein the parties appeared on the record and discussed some of the issues raised before the [habeas] court. In particular, the [habeas] court and the parties discussed the petitioner's claims pertaining to the trial court's handling of the jury note. The [habeas] court then permitted the parties to provide supplemental briefs regarding those claims, which both parties submitted a few weeks thereafter.

"The [habeas] court . . . subsequently issued a memorandum of decision denying the petition. First, the [habeas] court concluded that Simon did not render ineffective assistance of counsel, rejecting multiple allegations underlying the petitioner's claim. Second, the [habeas] court concluded that Falk did not provide ineffective assistance of counsel. Third, the [habeas] court concluded that the petitioner's claim that the trial court committed constitutional error in its charge to the jury regarding the intent element of murder was procedurally defaulted and, in any event, meritless because the charge was correct and not misleading. Fourth, the [habeas] court concluded that the petitioner's claim that the trial court committed constitutional error in its handling of the jury note was both procedurally defaulted and not raised properly before the habeas court. Nonetheless, the [habeas] court considered the claim on its merits, concluding that the trial court's errors did not prejudice the petitioner and were, therefore, harmless. Finally, the [habeas] court rejected the petitioner's broad claim in count four that his incarceration violated his constitutional rights, citing its conclusions that the petitioner did not prove any of his

allegations in counts one, two, or three of his amended petition.

"The petitioner filed a petition for certification to appeal from the [habeas] court's judgment [to the Appellate Court], which [was] granted. Before filing his appeal with [the Appellate Court], the petitioner filed a motion for reconsideration, which the habeas court denied. The petitioner then filed a motion for rectification, arguing that the habeas court improperly failed to use a structural error analysis to determine whether the trial court had violated his constitutional rights. The habeas court denied his motion." (Citations omitted; footnotes omitted; internal quotation marks omitted.) *Taylor* v. *Commissioner of Correction*, supra, 154 Conn. App. 689–92.

On appeal to the Appellate Court, the petitioner claimed, inter alia, "that the [habeas] court erroneously concluded that . . . [Simon] did not render ineffective assistance of counsel for his failure to . . . object to the trial court's errors in its handling of a jury note." Id., 688. The Appellate Court rejected this claim, concluding that "[b]oth the petitioner and the habeas court agree that Simon's performance in relation to the jury note was deficient. His deficient performance did not, however, prejudice the petitioner." Id., 720. The Appellate Court further concluded that "we agree with the [habeas] court that this is not one of the rare instances wherein a petitioner need not prove prejudice to establish an ineffective assistance of counsel claim. . . . We are not persuaded that the circumstances of this case require us to remove from the petitioner the burden to prove prejudice." (Citations omitted; footnote omitted.) Id., 721–22. Thereafter, the petitioner filed a petition for certification to appeal to this court, which was granted.[1]

On appeal to this court, the petitioner claims that the Appellate Court incorrectly affirmed the judgment of the habeas court denying his petition. Specifically, the petitioner asserts that the Appellate Court incorrectly required him to demonstrate prejudice from Simon's handling of the jury note during trial.

We begin by setting forth the legal principles and standard of review applicable to the petitioner's appeal. "The habeas judge, as the trier of facts, is the sole arbiter of the credibility of witnesses and the weight to be given to their testimony." (Internal quotation marks omitted.) *Taylor* v. *Commissioner of Correction*, 284 Conn. 433, 448, 936 A.2d 611 (2007). The application of historical facts to questions of law that is necessary to determine whether the petitioner has demonstrated prejudice under *Strickland* v. *Washington*, 466 U.S. 668, 687, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984), however, is a mixed question of law and fact subject to our plenary review. See, e.g., *Copas* v. *Commissioner of Correction*, 234 Conn. 139, 152–53, 662 A.2d 718 (1995).

"As enunciated in *Strickland* . . . [a] claim of inef-

fective assistance of counsel consists of two components: a performance prong and a prejudice prong. To satisfy the performance prong . . . the petitioner must demonstrate that his attorney's representation was not reasonably competent or within the range of competence displayed by lawyers with ordinary training and skill in the criminal law. . . . To satisfy the prejudice prong, a claimant must demonstrate that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." (Internal quotation marks omitted.) *Fernandez* v. *Commissioner of Correction*, 291 Conn. 830, 838, 970 A.2d 721 (2009). A court can find against a petitioner, with respect to a claim of ineffective assistance of counsel on either the performance prong or the prejudice prong, whichever is easier. *Washington* v. *Commissioner of Correction*, 287 Conn. 792, 852–53, 950 A.2d 1220 (2008).

The following additional facts, as found by the habeas court, are relevant to the present appeal. "On the third day of deliberations, the trial court received a jury note signed by the foreperson.[2] The note read:

" 'Judge Barry—I have polled the jury [four] times after various deliberations and discussions. Votes were as follows on the charge of murder:

" '10-8-97     4G     5NG     3 undecided

" '10-9-97     6G     5NG     1 undecided

" '10-9-97     7G     5NG

" '10-10-97    7G     5NG

" 'I started discussion this [morning] with a proposal to compromise—that is, that we would find [the petitioner] not guilty on murder and move to convict on a lesser charge. This proposal was rejected by [four] jurors.

" 'Deliberations continued and a [fourth] vote was taken.

" 'Next steps??' "

"The court had the following exchange with the foreperson after receiving the note:

" 'The Court: . . . Let me ask you . . . am I correct, having read your note—would I be correct to state that the jury is in disagreement as to a verdict of guilty or not guilty regarding the first count of murder?

" 'The Foreperson: Yes, Your Honor. And, therefore, we never got to the second count.

" 'The Court: I understand. I believe that you have deliberated for a total of somewhere around four hours or approximately a little more. And I may be wrong about that. But both yesterday and today and for a total of four to five hours, I believe, but I'm not certain. In any event, I believe more deliberations are necessary.

I want to remind you that you have to deal with count one as charged first, that is the charge of murder, and reach a unanimous decision of guilt or [innocence] as to that charge, if you possibly can. If your unanimous verdict is guilty, you will move on to count two. If your unanimous verdict on murder in the first count is not guilty, then and only then will you consider lesser included offenses of murder as I instructed you. And then, after having done that, you would move on to count two.

" 'If you remain in disagreement on the charge of murder after further deliberations, let us know in the same manner with simply a note to the effect that you are in disagreement on the first count, and we will bring you back into court for further instructions.'

"After the jury left the courtroom, the court marked the note as a court exhibit and sealed it. The court stated that a verbatim recitation of the note's contents was not placed into the record or revealed to counsel, but that counsel knew that the jury was in disagreement about reaching a unanimous verdict on the murder charge and was seeking advice on how to proceed. Counsel did not object to the trial court's decision to seal the note or its instruction to the jury following receipt of the note. The note was unsealed for the first time during the habeas trial. . . .

"The [habeas] court first concluded that Simon's performance was deficient in regard to the jury note. The [habeas] court found that the trial court failed to follow Practice Book § 42-49, which required a court to articulate its reasoning on the record if it decided to seal any portion of the court's file. The [habeas] court further found that, in any event, a trial court could not prevent a defendant from viewing the contents of a jury note. In addition, the court noted that Practice Book § 42-7 required a court to provide notice and a 'reasonable opportunity to be present' to parties before communicating with jurors on any aspect of a case. The [habeas] court determined that the trial court failed to follow these procedures.

"Furthermore, the [habeas] court found the following regarding Simon's performance. Simon did not request, on the record, to see the note; Simon did not object to the [trial] court's handling of the note; reasonably competent trial counsel would have known the law, as it existed at the time of the petitioner's trial, concerning jury notes; reasonably competent counsel would have been aware of his or her client's rights to view a jury note and respond to it; there was no strategic or tactical reason not to request, on the record, to view the note; there was no strategic or tactical reason not to object to the court's handling of the note; and any off-the-record discussion by Simon with the trial court judge about the note, if it occurred, did not constitute a sufficient substitute for discussing the note on the record.

On the basis of these findings, the [habeas] court concluded that Simon's performance was deficient as it related to the trial court's handling of the note.

"The [habeas] court proceeded to conclude that Simon's deficient performance, as it related to the jury note, did not prejudice the petitioner." (Footnotes altered.) *Taylor* v. *Commissioner of Correction*, supra, 154 Conn. App. 712–16. The habeas court stated "that the trial court addressed the note 'in the most typical of ways' by instructing the jury in open court to, inter alia, continue deliberating and reach a unanimous verdict on the murder charge before considering lesser included offenses and the other charge. According to the habeas court, a Chip Smith[3] charge was neither provided to the jury nor needed by the jury at that point in its deliberations. Because the trial court's response to the note was reasonable, the court determined that Simon would not have suggested any alternative response to the note had the trial court shared the contents of the note with him. The habeas court found that '[t]he petitioner presented no evidence, either from . . . Simon or [through an expert witness], that competent counsel would have done anything differently had they been aware of the note.' On the basis of its foregoing findings, the court concluded that it could 'not see how the outcome of the trial could have reasonably been different had the trial court shown [the jury note] to the petitioner and . . . Simon, and given them an opportunity to respond.' " (Footnote added.) Id., 717–18.

On appeal to this court, the petitioner claims that the harmless error doctrine does not apply because the defects were structural in nature. He claims that these defects implicated his rights to be present during a critical stage of the proceedings. Under the unique circumstances of this case, he claims, prejudice should be presumed. In the alternative, if not a structural error, the petitioner claims that he was prejudiced by Simon's failure to object to the sealing of the note because he was deprived of the opportunity to inquire into the nature of the compromise and to suggest to the court that its response to the note should include a thorough Chip Smith instruction, rather than the defective Chip Smith charge that he claims the court provided. We disagree.

"A claim of ineffective assistance of counsel is governed by the two-pronged test set forth in *Strickland* . . . . Under *Strickland*, the petitioner has the burden of demonstrating that (1) counsel's representation fell below an objective standard of reasonableness, and (2) counsel's deficient performance prejudiced the defense because there was a reasonable probability that the outcome of the proceedings would have been different had it not been for the deficient performance. . . . For claims of ineffective assistance of counsel arising out

of the plea process, the United States Supreme Court has modified the second prong of the *Strickland* test to require that the petitioner produce evidence that there is a reasonable probability that, but for counsel's errors, [the petitioner] would not have pleaded guilty and would have insisted on going to trial. . . . An ineffective assistance of counsel claim will succeed only if both prongs [of *Strickland*] are satisfied." (Internal quotation marks omitted.) *Dyous* v. *Commissioner of Mental Health & Addiction Services*, 324 Conn. 163, 186,    A.3d    (2016).

"The issue of whether the representation that a defendant received at trial was constitutionally inadequate is a mixed question of law and fact. . . . As such, the question requires plenary review unfettered by the clearly erroneous standard. . . . In our review of this claim, we afford great deference to the habeas court's factual findings, which underlie its legal conclusions. The habeas court is afforded broad discretion in making its factual findings, and those findings will not be disturbed unless they are clearly erroneous. . . . Thus, [t]his court does not retry the case or evaluate the credibility of the witnesses. . . . Rather, we must defer to the [trier of fact's] assessment of the credibility of the witnesses based on its firsthand observation of their conduct, demeanor and attitude. . . . The habeas judge, as the trier of facts, is the sole arbiter of the credibility of witnesses and the weight to be given to their testimony." (Citation omitted; internal quotation marks omitted.) Id., 187.

The United States Supreme Court has, however, recognized that "[i]n certain . . . contexts [pertaining to the sixth amendment to the United States constitution], prejudice is presumed." *Strickland* v. *Washington*, supra, 408 U.S. 692. "In *United States* v. *Cronic*, [466 U.S. 648, 659–60, 104 S. Ct. 2039, 80 L. Ed. 2d 657 (1984)], which was decided on the same day as *Strickland*, the United States Supreme Court elaborated on the following three scenarios in which prejudice may be presumed: (1) when counsel is denied to a defendant at a critical stage of the proceeding; (2) when counsel 'entirely fails to subject the prosecution's case to meaningful adversarial testing'; and (3) when counsel is called upon to render assistance in a situation in which no competent attorney could do so. Notably, the second scenario constitutes an 'actual breakdown of the adversarial process,' which occurs when counsel completely fails to advocate on a defendant's behalf." *Davis* v. *Commissioner of Correction*, 319 Conn. 548, 555, 126 A.3d 538 (2015), cert. denied sub nom. *Semple* v. *Davis*,    U.S.    , 136 S. Ct. 1676, 194 L. Ed. 2d 801 (2016).

The United States Supreme Court has emphasized in *Florida* v. *Nixon*, 543 U.S. 175, 190, 125 S. Ct. 551, 160 L. Ed. 2d 565 (2004), *Mickens* v. *Taylor*, 535 U.S. 162, 166–67, 122 S. Ct. 1237, 152 L. Ed. 2d 291 (2002), and

*Bell* v. *Cone*, 535 U.S. 685, 696–97, 122 S. Ct. 1843, 152 L. Ed. 2d 914 (2002), how "seldom circumstances arise that justify a court in presuming prejudice," and "concomitantly, in forgoing particularized inquiry into whether a denial of counsel undermined the reliability of a judgment . . . ." *Ellis* v. *United States*, 313 F.3d 636, 643–44 (1st Cir. 2002), cert. denied, 540 U.S. 839, 124 S. Ct. 99, 157 L. Ed. 2d 72 (2003). "[T]here is a very limited class of cases involving error that is structural, that is to say, error that transcends the criminal process. *Johnson* v. *United States*, 520 U.S. 461, 468, 117 S. Ct. 1544, 137 L. Ed. 2d 718 (1997), citing *Sullivan* v. *Louisiana*, 508 U.S. 275, 113 S. Ct. 2078, 124 L. Ed. 2d 182 (1993) (defective reasonable doubt instruction); *Vasquez* v. *Hillery*, 474 U.S. 254, 106 S. Ct. 617, 88 L. Ed. 2d 598 (1986) (racial discrimination in selection of grand jury); *Waller* v. *Georgia*, 467 U.S. 39, 104 S. Ct. 2210, 81 L. Ed. 2d 31 (1984) (denial of public trial); *McKaskle* v. *Wiggins*, 465 U.S. 168, 104 S. Ct. 944, 79 L. Ed. 2d 122 (1984) (denial of self-representation at trial); *Gideon* v. *Wainwright*, 372 U.S. 335, 83 S. Ct. 792, 9 L. Ed. 2d 799 (1963) (complete denial of counsel); *Tumey* v. *Ohio*, 273 U.S. 510, 47 S. Ct. 437, 71 L. Ed. 749 (1927) (biased trial judge).

"Structural [error] cases defy analysis by harmless error standards because the entire conduct of the trial, from beginning to end, is obviously affected . . . . These cases contain a defect affecting the framework within which the trial proceeds, rather than simply an error in the trial process itself. . . . Such errors infect the entire trial process . . . and necessarily render a trial fundamentally unfair . . . . Put another way, these errors deprive defendants of basic protections without which a criminal trial cannot reliably serve its function as a vehicle for determination of guilt or innocence . . . and no criminal punishment may be regarded as fundamentally fair." (Internal quotation marks omitted.) *State* v. *Lopez*, 271 Conn. 724, 733–34, 859 A.2d 898 (2004).

The petitioner argues that the circumstances of the present case constituted both structural error and a situation in which both the first and second exceptions in *Cronic*, which excuse the petitioner from demonstrating prejudice under the sixth amendment, were met. We note that, because the petitioner never raised the claim of structural error under the first exception in *Cronic* before either the habeas court or the Appellate Court, that claim is not properly before this court because it was procedurally defaulted. Indeed, an accused is denied counsel at a critical stage of the trial "when counsel was either totally absent, or prevented from assisting the accused during a critical stage of the proceeding." *United States* v. *Cronic*, supra, 466 U.S. 659 n.25. This exception applies to the denial of counsel by government action, i.e., the actions of the trial court, rather than attorney error. Id.; see also *Bell* v. *Cone*,

supra, 535 U.S. 695–96 and n.3. Like structural error, the type of sixth amendment violation envisioned under the first exception set forth in *Cronic* is fully capable of being raised and decided in the trial court or on direct appeal. Unlike a typical claim of ineffective assistance of counsel under *Strickland*, which can only be adequately litigated in a collateral proceeding; see *State* v. *Leecan*, 198 Conn. 517, 541, 504 A.2d 480, cert. denied, 476 U.S. 1184, 106 S. Ct. 2922, 91 L. Ed. 2d 550 (1986); claims of structural error based on the complete denial of counsel in a proceeding would be apparent on the record. See *State* v. *Arline*, 223 Conn. 52, 63–65, 612 A.2d 755 (1992) (restriction on defendant's final argument violated right to effective assistance of counsel).

Indeed, as the Appellate Court properly concluded, the petitioner's claim of structural defect was procedurally defaulted precisely because it was a claim that could have, and should have, been raised at trial or on direct appeal. *Taylor* v. *Commissioner of Correction*, supra, 154 Conn. App. 725–27. Moreover, both the petitioner's claim of structural error and his claim under the first exception in *Cronic* are identical. Indeed, if sealing the note were to be equated with the denial of counsel, then such a denial would constitute structural error and excuse the petitioner from having to show prejudice. Consequently, the petitioner's claim under the first exception in *Cronic* is subject to procedural default, just as the habeas court found that his structural error claim had been procedurally defaulted.[4]

The petitioner also asserts that this court should presume prejudice under the second exception in *Cronic* because his counsel did not fairly test the adversarial process when he failed to object to the sealed note. This specific claim was not raised in the habeas court, the Appellate Court, or in the petition for certification to this court. Therefore, we decline to review it. See *Bennett* v. *New Milford Hospital, Inc.*, 300 Conn. 1, 32–33, 12 A.3d 865 (2011) (refused to review claim not preserved before trial court or Appellate Court, request for review pursuant *State* v. *Golding*, 213 Conn. 233, 239–40, 567 A.2d 823 [1989], for first time in reply brief, and constitutional claim not included in petition for certification to appeal from judgment of Appellate Court).[5]

The petitioner relies on *State* v. *Lopez*, supra, 271 Conn. 739, to support his claim that the error in the present case is structural in nature. *Lopez*, however, held found structural error only because the defendant in that case was represented, in absentia, by counsel with a possible conflict of interest that was the subject of the inquiry. Id., 734. In *Lopez*, the conflict of interest fell within the very limited class of cases involving error that is structural and transcends the criminal process because the deprivation of the defendant's right to be present was unquantifiable and indeterminate. Id., 738.

In the present case, by contrast, the failure to object to the sealed note was readily identifiable, and was capable of being quantitatively assessed in the context of the criminal trial. Consequently, *Lopez* is distinguishable and does not support the petitioner's claim of structural error in the present case.

The petitioner also asserts that this court should apply the reasoning of *People* v. *O'Rama*, 78 N.Y.2d 270, 274–75, 579 N.E.2d 189, 574 N.Y.S.2d 159 (1991), wherein the trial court received three jury notes indicating deadlock, and the court administered a deadlocked jury charge, similar to our Chip Smith charge, in response to two of the notes. The trial court judge had sealed one of the notes and counsel for the defendant objected. Id., 275. The New York Court of Appeals found that the trial court had erred by sealing the note without apprising the parties of its contents. Id., 280. Specifically, the New York Court of Appeals stated that "[m]anifestly, [the] defendant was prejudiced by the court's actions, since the decision to withhold the contents of the juror's note deprived him of the opportunity to have input, through counsel or otherwise, into the court's response to an important, substantive juror inquiry." (Footnote omitted.) Id., 279–80. However, as the Appellate Court properly concluded in the present case, *O'Rama* may be distinguished because that case involved a direct appeal on the basis of a trial court's failure to follow a particular rule of state criminal procedure, rather than a claim of ineffective assistance of counsel brought by means of a petition for habeas corpus. *Taylor* v. *Commissioner of Correction*, 154 Conn. App. 722. Our state jurisprudence has recognized that *Cronic* must be interpreted narrowly and applied rarely. *Vasquez* v. *Commissioner of Correction*, 128 Conn. App. 425, 436–38, 17 A.3d 1089, cert. denied, 301 Conn. 926, 22 A.3d 1277 (2011).

Furthermore, it is well established that ex parte communications between a judge and a jury, including circumstances that implicate the defendant's right to be present and the right to assistance of counsel, are subject to harmless error review. See *State* v. *Wooten*, 227 Conn. 677, 705–706, 631 A.2d 271 (1993) (ex parte communication between judge and juror subject to harmless error); *State* v. *McCall*, 187 Conn. 73, 81–82, 444 A.2d 896 (1982) (although judge's ex parte conversation with jury foreman in chambers constitutionally prohibited, prejudice must be found to warrant mistrial, burden on state on direct appeal to prove communication harmless beyond reasonable doubt); *State* v. *Hackett*, 182 Conn. 511, 522–24, 438 A.2d 726 (1980) (although judge's ex parte communication with juror arguably technical violation of right to be present and to have assistance of counsel, no reversible error in absence of prejudice). Many federal circuit courts are in accord. See, e.g., *United States* v. *Robinson*, 560 F.2d 507, 516 (2d Cir. 1977) ("there was little or no need for" trial court to

consult with counsel concerning court's response to jury note that revealed vote split), cert. denied, 435 U.S. 905, 98 S. Ct. 1451, 55 L. Ed. 2d 496 (1978); see also *United States* v. *Toliver*, 330 F.3d 607, 612 (3rd Cir. 2003) (harmless error analysis applies when trial judge answers jury's note without defendant or his counsel being present). Consequently, in view of the overwhelming authority, the Appellate Court correctly concluded that the petitioner was not excused from proving prejudice in a collateral proceeding on the basis of a claim that is subject to harmless error analysis on direct appeal.

The petitioner asserts that he was prejudiced because, had the contents of the note been disclosed, counsel would have requested a Chip Smith charge in response to the jury's deadlock and inquired into the nature of the proposed compromise. Had the jury been instructed not to abandon their conscientiously held views, he maintains, they would not have convicted him for murder. We disagree.

The prejudice prong of *Strickland* requires that the petitioner prove that there was a reasonable probability that the outcome of his trial would have been different had the petitioner and his counsel viewed the note. See *Taylor* v. *Commissioner of Correction*, supra, 154 Conn. App. 721. The petitioner failed to meet his required degree of proof in this instance because he presented no evidence that competent counsel would have requested a Chip Smith charge at that point in the deliberation process. Id., 717–21. Moreover, the petitioner presented no evidence that, had he requested a Chip Smith charge under the circumstances, the court would have adopted his suggestion, or that the issuance of such a charge would have established a reasonable probability that the petitioner would not have been convicted of murder. See *State* v. *Wooten*, supra, 227 Conn. 706–708. The Appellate Court properly held that the jury was not deadlocked, and that the trial court did not administer a Chip Smith charge, let alone a defective one as alleged by the petitioner. *Taylor* v. *Commissioner of Correction*, supra, 154 Conn. App. 720–22.[6] The Appellate Court further correctly held that the trial court appropriately directed the jury to continue its deliberations and addressed the proposal to compromise by instructing the jury that they must reach a unanimous verdict on the murder charge before considering any lesser included offenses or the other charge. Id.

The jury in the present case had been deliberating for only four to five hours and had reviewed selected portions of witness testimony and instructions, the trial court addressed all jurors together, there was no indication that the jury was deadlocked, and the trial court did nothing to signal that the jury should decide the case in a certain way. Because a Chip Smith charge is

designed to encourage a deadlocked jury to reach a verdict and, in the present case, the jury gave no indication that further deliberations would be fruitless, the trial court would not likely have so instructed at that early point in the deliberations, regardless of whether counsel had suggested that charge. The jury had merely reported the posture of the voting, in general terms, indicated that disagreements existed, and inquired as to the next steps. See *United States* v. *Figueroa-Encarnacion*, 343 F.3d 23, 31–32 (1st Cir. 2003) (no plain error where jury reported that they would not be able to reach verdict after having deliberated almost four hours, and court merely instructed jury to continue deliberating), cert. denied sub nom. *Medina* v. *United States*, 540 U.S. 1140, 124 S. Ct. 1130, 157 L. Ed. 2d 951 (2004).

The petitioner further claims that he was prejudiced because he, himself, was prevented from inquiring into the nature of the compromise discussed by the jury foreperson and, thus, was prevented from suggesting a suitable response. Again, his claim must be rejected because he offered no evidence to support it. Moreover, the trial court would not have permitted an inquiry into the nature of the proposed compromise in the middle of deliberation because to do so would have violated the sanctity of the deliberation process. See *State* v. *West*, 274 Conn. 605, 650, 877 A.2d 787 (recognizing cardinal principle that deliberations of jury shall remain private and secret; primary if not exclusive purpose of jury privacy and secrecy is to protect jury's deliberations from improper influence). Thus, the petitioner cannot prove prejudice based on his claim that counsel's failure to object to the sealing of the note violated his right to be present. He failed to prove that he would have had something to contribute by way of influencing the proceedings.

The petitioner also argues that the short period of deliberations following the court's failure to instruct on the proceedings[7] supports his claim of prejudice. The extent of the deliberations after the court responded to the sealed note, however, demonstrates that the jury received the instruction to continue in a responsible manner and it did so. They deliberated approximately four and one-half hours after the instructions. Therefore, the petitioner cannot prevail on any of his claims of prejudice.

To obtain review by this court, a party aggrieved by a judgment of the Appellate Court must file, and this court must grant, a petition for certification to appeal. See General Statutes § 51-197f (limiting appeals by parties from Appellate Court judgments to cases certified for review "upon petition by an aggrieved party"); see also Practice Book § 84-1; *State* v. *Albino*, 312 Conn. 763, 770–71, 97 A.3d 478 (2014). Review by this court by way of a petition for certification to appeal is not a

matter of right but a matter of discretion. General Statutes § 51-197f; Practice Book § 84-2. The certification process enables this court to limit its consideration to "appropriate issue[s], without the necessity of also considering issues that do not warrant review by this court." (Internal quotation marks omitted.) *State* v. *Ellis*, 224 Conn. 711, 722, 621 A.2d 250 (1993).

In his brief to this court, the petitioner presented the following issues as "alternative grounds" for reversing the judgment of the Appellate Court: (1) that Simon rendered ineffective assistance in failing to introduce certain evidence that Wightwood was too drunk to make an identification, and that the habeas court and the Appellate Court had erred in concluding that this evidence had been presented to the jury through the testimony of Luisa St. Pierre, a detective at the Hartford Police Department; and (2) that the appellate counsel was ineffective for failing to move to have the note unsealed and for failing to raise claims "regarding the note."

The petitioner raised the first claim in his petition for certification, and this court specifically decided not to include it in its certified questions. See *State* v. *Cote*, 314 Conn. 570, 580–81, 107 A.3d 367 (2014) (this court would not review claim that was beyond scope of certified question). The petitioner failed to raise the second claim in his petition for certification, despite the opportunity to do so. Having been denied certification on the first claim, and having forgone the opportunity to seek certification of the second claim, he cannot now be permitted to obtain review of either claim with any additional special permission of the court.[8] Accordingly, we decline to consider these claims in the present appeal.

The judgment of the Appellate Court is affirmed.

In this opinion the other justices concurred.

[1] We granted certification limited to the following two issues: (1) "Did the Appellate Court properly determine that [Simon's] deficient performance in responding to the treatment of the jury note was subject to harmless error analysis, under which the petitioner bore the burden of proving harm?"; and (2) "If so, did the Appellate Court properly determine that the petitioner failed to meet that burden?" *Taylor* v. *Commissioner of Correction*, 316 Conn. 905, 906, 111 A.3d 881 (2015). In accordance with our long-standing policy of reframing certified questions to more accurately reflect the issues presented on appeal, we now reframe the certified questions in the present case as follows: (1) If Simon's performance was deficient, as held by the Appellate Court, did the Appellate Court properly determine that it was the petitioner's burden to prove that the deficient performance in responding to the treatment of the jury note prejudiced him?; and (2) Did the Appellate Court correctly determine that the petitioner had failed to demonstrate prejudice? See *State* v. *Ouellette*, 295 Conn. 173, 184, 989 A.2d 1048 (2010); *Rosado* v. *Bridgeport Roman Catholic Diocesan Corp.*, 276 Conn. 168, 191, 884 A.2d 981 (2005).

[2] "According to the habeas court, the jury did not commence deliberations on its first day of deliberations until late in the day, after hearing closing arguments and jury instructions. The jury spent the majority of its second day of deliberations discussing various prior jury notes with the court and hearing playbacks of testimony and instructions. After hearing the playbacks, the jury deliberated for approximately four hours before submitting the note at issue on appeal, which the foreperson signed at 11:50 a.m. on the morning

of the third day of deliberations." *Taylor* v. *Commissioner of Correction*, supra, 154 Conn. App. 712 n.17.

[3] A Chip Smith charge provides guidance to a deadlocked jury in reaching a verdict. See *State* v. *O'Neil*, 261 Conn. 49, 74–75, 801 A.2d 730 (2002). We have adopted the following language for Chip Smith charges: "The instructions that I shall give you now are only to provide you with additional information so that you may return to your deliberations and see whether you can arrive at a verdict.

"Along these lines, I would like to state the following to you. The verdict to which each of you agrees must express your own conclusion and not merely the acquiescence in the conclusion of your fellow jurors. Yet, in order to bring your minds to a unanimous result, you should consider the question you have to decide not only carefully but also with due regard and deference to the opinions of each other.

"In conferring together, you ought to pay proper respect to each other's opinions and listen with an open mind to each other's arguments. If the much greater number of you reach a certain conclusion, dissenting jurors should consider whether their opinion is a reasonable one when the evidence does not lend itself to a similar result in the minds of so many of you who are equally honest and equally intelligent, who have heard the same evidence with an equal desire to arrive at the truth and under the sanctions of the same oath.

"But please remember this. Do not ever change your mind just because other jurors see things differently or to get the case over with. As I told you before, in the end, your vote must be exactly that—your own vote. As important as it is for you to reach a unanimous agreement, it is just as important that you do so honestly and in good conscience.

"What I have said to you is not intended to rush you into agreeing on a verdict. Take as much time as you need to discuss the matter. There is no need to hurry." (Emphasis omitted.) Id.

[4] Even if we were to assume, arguendo, that the trial court erred in failing to disclose to counsel the contents of the note, such error was no more properly characterized as a denial of counsel than would a trial court's error in, for example, precluding counsel from asking certain questions of witnesses or denying counsel access to certain records. See *United States* v. *Fernandez*, 652 F.3d 56, 62–64 (1st Cir.) (trial court's error in responding to jury notes during deliberations, seeking transcripts that were not available, without alerting counsel, not prejudicial), cert. denied sub nom. *Gonzalez-Melendez* v. *United States*, 565 U.S. 924, 132 S. Ct. 353, 181 L. Ed. 2d 223 (2011); *United States* v. *Gonzalez-Melendez*, 594 F.3d 28, 36–37 (1st Cir. 2010) (court's failure to disclose to parties jury note that requested copies of indictment and instructions and concluded with ambiguous phrase " 'please explain,' " and its response, subject to harmless error analysis).

[5] We note that, even if this claim were to be reviewed on its merits, it would fail because the United States Supreme Court made clear in *Bell* v. *Cone*, supra, 535 U.S. 697, that the second exception in *Cronic* applies only when the attorney's failure is complete, rather than simply an alleged failure at specific points in the trial, as in this case. Counsel must "entirely [fail] to subject the prosecution's case to meaningful adversarial testing." (Emphasis omitted; internal quotation marks omitted.) Id.

[6] The petitioner relies on *United States* v. *Ronder*, 639 F.2d 931, 932 (2d Cir. 1981), and argues that the trial court's instruction to the jury in response to the note in the present case constituted a defective, prejudicial Chip Smith charge that required correction. In *Ronder*, a jury submitted three notes to the trial court on its final day of deliberations. Id., 932–33. The trial court did not share the contents of the notes with counsel and unilaterally responded to each note. Id. The United States Court of Appeals for the Second Circuit concluded that the trial court committed reversible error by not revealing the contents of the notes to counsel, explaining that counsel could have contributed valuable input in tailoring the court's response to each note. Id., 934–35. In addition, as the Appellate Court noted in its opinion "the Second Circuit emphasized that the evidence in the case was sharply disputed and that the jury had twice reported a deadlock, making defense counsel's involvement in the court's responses to the notes critical." *Taylor* v. *Commissioner of Correction*, supra, 154 Conn. App. 716–17. *Ronder* is distinguishable on the grounds that, the jury here was not deadlocked, the trial court had not provided the jury with a defective Chip Smith charge, but merely instructed the jury to continue deliberating and to reach a verdict on the murder charge before considering any lesser included offenses or the other charge, and there was no evidence that the jury felt pressured to

reach a verdict after receiving the court's instruction in response to the note.

[7] The petitioner also claims, in the context of his prejudice argument, that counsel's failure to object to an alleged erroneous instruction on intent contributed to prejudice. This issue is not properly before this court. The habeas court rejected this argument, and the petitioner did not challenge that ruling on appeal before the Appellate Court. *Taylor* v. *Commissioner of Correction*, supra, 154 Conn. App. 720 n.24.

[8] As to the first of these two claims, the Appellate Court agreed with the habeas court that, although Simon did not introduce the evidence in question—namely, a document authored by St. Pierre indicating that Wightwood had been too drunk to make an identification—the document was used on cross-examination "to orally publish St. Pierre's written statement in the document to the jury," and, thus, the petitioner had not met his burden to prove that Simon's performance was deficient for failing to introduce that document to impeach Wightwood. *Taylor* v. *Commissioner of Correction*, supra, 154 Conn. App. 697–700. As to the second claim, the Appellate Court agreed with the habeas court, concluding that the petitioner had presented no evidence regarding the extent to which Falk considered this issue, and if he did, why he decided not to pursue it, and further concluding that, given its conclusion that any error in handling the note during trial did not prejudice the petitioner, it could not conclude that Falk was ineffective for failing to raise the issue on appeal. Id., 722–24.