******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the latest version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

# TREMAINE SMITH *v.* COMMISSIONER
# OF CORRECTION
## (AC 38769)

Keller, Elgo and Beach, Js.

*Syllabus*

The petitioner sought a writ of habeas corpus, claiming that his trial counsel had provided ineffective assistance in advising him on pretrial confinement credit during a plea proceeding. In February, 2010, the petitioner, while waiting to be sentenced on a guilty plea to a violation of probation charge, was arrested and arraigned on a variety of additional charges, including kidnapping in the first degree. At the time of his arraignment, the petitioner was ordered held in custody on bond on all charges against him. In September, 2010, the petitioner was sentenced on the violation of probation plea. Thereafter, the petitioner pleaded guilty to the kidnapping charge pursuant to a plea offer, and the trial court sentenced him to a total effective sentence of fourteen years incarceration, execution suspended after ten years, with three years of probation, to run concurrently with an eleven year sentence that he previously had received on a conviction of attempt to commit robbery in the first degree. The trial court also explained to the petitioner that he would receive jail credit dating back to September, 2010. At the time, the petitioner did not raise any issue with respect to jail credit for time served prior to that date. In his amended petition for a writ of habeas corpus, the petitioner claimed, in alleging ineffective assistance, that his trial counsel failed to request that the petitioner be awarded the approximately seven months of jail credit that had accrued between February, 2010, the date his presentence incarceration had commenced, and September, 2010. At the habeas trial, trial counsel testified that he mistakenly had advised the petitioner that he would receive all of his jail credit. The petitioner testified that he had relied on trial counsel's assurance regarding jail credit and that the reason that he had agreed to the plea offer on the kidnapping charge was because he expected to receive full jail credit. The habeas court rendered judgment denying the habeas petition, concluding that the petitioner had failed to establish the requisite prejudice. Thereafter, the habeas court denied the petition for certification to appeal, and the petitioner appealed to this court. *Held* that the habeas court did not abuse its discretion in denying the petition for certification to appeal, as the petitioner failed to demonstrate that his claim that his trial counsel had provided ineffective assistance was debatable among jurists of reason, that a court could have resolved the issue in a different manner, or that the issue was adequate to deserve encouragement to proceed further, and, accordingly, the petitioner's appeal was dismissed: the petitioner failed to meet his burden of proving that there was a reasonable probability that, but for his allegedly mistaken belief that he was going to receive the additional seven months of jail credit, he would not have accepted the plea offer on the kidnapping charge and instead would have gone to trial, as the primary evidence offered by the petitioner to support his claim was his own testimony, which the habeas court did not credit, and this court could not disturb that court's determination that the petitioner's testimony was not credible; moreover, trial counsel testified that receiving full jail credit was only one of many concerns that the petitioner had with respect to the plea, trial counsel also testified that he disagreed with the suggestion of the petitioner's habeas counsel that the petitioner was against entering a guilty plea unless he received all of his jail credit, and the record revealed that, if the petitioner proceeded to trial, he faced a maximum exposure on the kidnapping charge of thirty years of incarceration, ten of which were mandatory, additional exposure as a persistent serious felony offender, and the prospect of his sentence on the kidnapping charge running consecutively to, rather than concurrently with, his eleven year attempted robbery sentence.

Argued October 18, 2017—officially released January 9, 2018

Amended petition for a writ of habeas corpus, brought to the Superior Court in the judicial district of Tolland, and tried to the court, *Sferrazza, J.*; judgment denying the petition; thereafter, the court denied the petition for certification to appeal, and the petitioner appealed to this court. *Appeal dismissed.*

*Deren Manasevit*, assigned counsel, for the appellant (petitioner).

*Laurie N. Feldman*, special deputy assistant state's attorney, with whom, on the brief, were *Maureen Platt*, state's attorney, and *Grayson Holmes*, former special deputy assistant state's attorney, for the appellee (respondant).

*Opinion*

ELGO, J. The petitioner, Tremaine Smith, appeals following the denial of his petition for certification to appeal from the judgment of the habeas court denying his amended petition for a writ of habeas corpus, in which he alleged ineffective assistance on the part of his trial counsel in advising him on presentence confinement credit during a plea proceeding. The dispositive issue is whether the habeas court abused its discretion in so doing. We conclude that it did not and, accordingly, dismiss the appeal.

The following factual and procedural history is relevant to our resolution of this appeal. On January 14, 2008, the petitioner pleaded guilty to one count of escape in the first degree in violation of General Statutes § 53a-169, and was sentenced to a term of five years incarceration, execution suspended after nine months, with three years of probation. He thereafter violated the terms of his probation and, on November 30, 2009, entered a guilty plea in docket number CR-07-0364815 for violating General Statutes § 53a-32 (first docket). Prior to sentencing on that matter, the petitioner, on February 3, 2010, was arrested and arraigned on a variety of additional charges. In docket number CR-10-0387865, the petitioner was charged with one count of kidnapping in the first degree in violation of General Statutes § 53a-92 (second docket). In docket number CR-10-0387866, the petitioner was charged with one count each of attempt to commit robbery in the first degree in violation of General Statutes §§ 53a-49 (a) (2) and 53a-134 (a) (3), and attempt to commit kidnapping in the first degree in violation of General Statutes §§ 53a-49 (a) (2) and 53a-92 (a) (2) (B) (third docket). At the time of the February 3, 2010 arraignment, the petitioner was ordered held in custody on bond on all charges. On June 30, 2010, the petitioner was charged with one count of criminal violation of a protective order in violation of General Statutes § 53a-223 (fourth docket).[1]

The petitioner appeared before the trial court for a sentencing hearing on his violation of probation plea in June, 2010. At that time, the court advised the petitioner as follows: "I was prepared today to sentence you on the violation of probation [charge]. I'm not going to do that because you don't want to be put in a position where you end up doing dead time[2] and you have to make a knowing and intelligent decision as to whether you want to resolve all [your] cases at one time and thereby get one sentence." (Footnote added.) The court thus deferred its decision to allow the petitioner additional time to "make an informed decision" on how to proceed.

The petitioner declined to proceed with a global resolution of his pending cases. On September 13, 2010,

the court held a sentencing hearing on the petitioner's violation of probation plea. Due to the fact that the petitioner "didn't even make it twelve hours without violating the conditions of his [November 30, 2009] release," the state requested a sentence of four years and three months incarceration, the full amount of time remaining on the underlying sentence for escape in the first degree. The court nevertheless sentenced the petitioner to a lesser sentence of four years incarceration. At his habeas trial, the petitioner's counsel informed the habeas court that "[a]ll of his credit" that had accrued since his arrest on February 3, 2010, was applied by the trial court toward that sentence. Cf. *Washington* v. *Commissioner of Correction*, 287 Conn. 792, 800, 950 A.2d 1220 (2008) (explaining that General Statutes § 18-98d "excludes from [presentence confinement] credit any time that a prisoner spends incarcerated for a prior conviction before sentencing on a separate, pending charge").[3]

At the September 13, 2010 sentencing hearing, the trial court advised the petitioner that an offer for a "global resolution" of all other charges remained pending. The terms of that plea offer were fifteen years incarceration, execution suspended after ten years, with three years of probation. The court informed the petitioner that if he accepted that plea offer within the next four weeks, the court would "make it retroactive so [the petitioner] would not lose any time in jail." The petitioner rejected that offer.

The petitioner subsequently proceeded to a trial on the charges detailed in the third docket, at the conclusion of which the jury found the petitioner guilty of attempt to commit robbery in the first degree.[4] On April 15, 2011, the court sentenced the defendant to a term of eleven years incarceration, concurrent to the petitioner's four year sentence on his violation of probation conviction. See *State* v. *Smith*, 148 Conn. App. 684, 694, 86 A.3d 498 (2014), aff'd, 317 Conn. 338, 118 A.3d 49 (2015).

On May 5, 2011, the petitioner appeared before the trial court for a plea hearing on the kidnapping charge contained in the second docket. At that time, the court advised him that the plea offer was for fourteen years incarceration, execution suspended after ten years, with three years of probation, which sentence would run concurrently with the eleven year sentence he had received weeks earlier on his attempted robbery conviction. The following colloquy between the court and the petitioner then occurred:

"The Court: Okay. Just so it's clear, Mr. Smith, I told you before, when a case is called in for trial, I was offering you fourteen years suspended after ten years with three years of probation to run concurrent[ly] with the sentence you're now doing [on the attempted robbery conviction], and I was going to bring it back to

September [13, 2010], the date you went to jail on the violation of probation. Understood? You got that?

"[The Petitioner]: I'm listening.

"The Court: No. Understand that so far.

"[The Petitioner]: Yeah."

The petitioner's trial counsel, Attorney Thomas Mitchell-Hoffler,[5] then informed the court that the petitioner was concerned that he had lost a total of eighteen months of credit for presentence confinement.[6] Mitchell-Hoffler continued: "I was explaining to him [that is] called dead time and because [the petitioner] didn't take a global offer on the day [he was] sentenced . . . on the [violation of probation plea], any time after that would be dead time." Mitchell-Hoffler then informed the court that the petitioner was asking for a lesser sentence in light of that dead time. The court declined that request and ordered the matter to be placed on the firm trial list.

Later that day, the matter was recalled. During its canvass, the court inquired as to whether the petitioner was satisfied with Mitchell-Hoffler's representation. When the petitioner indicated that he wished he had "more time to think about" the offer, the court promptly concluded its canvass, stating: "I'm not taking the plea because he wants more time. He's not going to come back later and say there's a habeas or the judge forced him to plead. Trial list. That's it."

The matter was called a third time later that day. After Mitchell-Hoffler assured the court that the petitioner was prepared to enter his plea, the court canvassed the petitioner. During that canvass, the petitioner indicated that he had adequate time to consider the terms of the plea and was satisfied with Mitchell-Hoffler's representation. The petitioner also acknowledged that he faced a maximum exposure on the kidnapping charge of thirty years incarceration, ten of which were a mandatory minimum, which sentence could run consecutively to his eleven year sentence for attempted robbery.[7] The petitioner at that time pleaded guilty, pursuant to the *Alford* doctrine,[8] to both the kidnapping in the first degree and the criminal violation of a protective order charges contained in the second and fourth dockets. On the kidnapping charge, the court sentenced the petitioner in accordance with the terms of the plea. On the protective order violation, the court sentenced him to a concurrent term of one year incarceration. The court thus entered a total effective sentence of fourteen years incarceration, execution suspended after ten years, with three years of probation, to run concurrently with the petitioner's eleven year sentence for attempted robbery.

The court then explained to the petitioner that, pursuant to that sentence, he would receive jail credit dating back to September 13, 2010. At that time, neither the

petitioner nor Mitchell-Hoffler raised any issue with respect to credit for time served prior to that date. Moreover, the mittimus issued by the court, which was admitted into evidence at the habeas trial, specified that the petitioner was entitled to jail credit from September 13, 2010.

The petitioner thereafter filed a direct appeal of his conviction for attempted robbery, as charged in the third docket. While that appeal was pending, the petitioner, appearing as a self-represented litigant, filed a petition for a writ of habeas corpus challenging that conviction. In his petition, he alleged that the Department of Correction (department) had not correctly calculated his jail credit with respect to his sentence for attempted robbery.

Nineteen months later, this court ruled on the petitioner's direct appeal and reversed his judgment of conviction for attempted robbery due to evidential insufficiency. See *State* v. *Smith*, supra, 148 Conn. App. 685. When our Supreme Court subsequently granted certification to review that judgment, the petitioner filed a motion to continue his habeas proceeding. In that motion, the petitioner, now aided by habeas counsel, averred that if the Supreme Court affirmed this court's judgment, it would render the habeas action moot, because "his best relief in the habeas court would be a new trial" on the attempted robbery charge. The court granted the continuance, thereby postponing the habeas trial indefinitely.

Approximately one year later, our Supreme Court affirmed this court's reversal of the petitioner's judgment of conviction for attempt to commit robbery in the first degree and remanded the case to the trial court with direction to render a judgment of acquittal on that charge. *State* v. *Smith*, 317 Conn. 338, 356, 118 A.3d 49 (2015). The petitioner, however, did not withdraw his habeas corpus petition. Rather, he filed an amended petition for a writ of habeas corpus that, for the first time, alleged that he was "collaterally attacking" his judgment of conviction for kidnapping in the first degree, as charged in the second docket. In that petition, the petitioner claimed, inter alia, that Mitchell-Hoffler rendered ineffective assistance of counsel in that "he failed to request that the petitioner be awarded [approximately seven months of] jail credit" from February 3, 2010, the date on which his presentence incarceration commenced, rather than from September 23, 2010.[9]

A habeas trial was held on December 4, 2015. The petitioner's case consisted of the testimony of Mitchell-Hoffler and the petitioner. In addition, several transcripts of the petitioner's criminal proceedings, the August 5, 2011 mittimus, and a certified "movement sheet" prepared by the department were admitted into evidence as exhibits. In his testimony, Mitchell-Hoffler acknowledged that the petitioner was reluctant to enter

a plea on his kidnapping charge and had "many concerns," including obtaining credit for jail time. Mitchell-Hoffler testified that he had multiple discussions with Judge Damiani, the trial judge, about the issue of jail credit, and "begged him to give [the petitioner] some time back on the dead time . . . ." In response, Judge Damiani reminded Mitchell-Hoffler that he was not obligated by law to credit any such jail time, but ultimately agreed to credit a portion of that time. As Mitchell-Hoffler recounted on cross-examination:

"[The Respondent's Counsel]: Judge Damiani was aware of the dead time issue.

"[Mitchell-Hoffler]: That's correct.

"[The Respondent's Counsel]: And Judge Damiani said to you that he wouldn't give him that credit. He wouldn't put it on the [mittimus].

"[Mitchell-Hoffler]: He was going . . . to use the [September 13, 2010] date that was given for the [violation of probation].

"[The Respondent's Counsel]: So, Judge Damiani communicated to you and to [the petitioner] that he would get some credit, but not all.

"[Mitchell-Hoffler]: I'm not sure if those were his exact words, but he said he was going to give him credit, so I was happy.

"[The Respondent's Counsel]: And Judge Damiani explained to [the petitioner] that if he didn't take the offer that he wasn't going to get any credit.

"[Mitchell-Hoffler]: And that he was going to the trial list that day, and he would start picking a jury.

"[The Respondent's Counsel]: And that [the petitioner] was going to get more time than what the offer was.

"[Mitchell-Hoffler]: [Judge] Damiani warned everyone that if you didn't take the offer at that time, if you came back even a day later, it was going up at least by a year."

Mitchell-Hoffler also testified that, prior to the guilty plea on the kidnapping charge, he advised the petitioner that any dead time would not count as credit against his period of incarceration. Mitchell-Hoffler admitted that, because the sentences on both the violation of probation and the kidnapping convictions were to commence on the same date, he had assumed that the department nonetheless would credit the petitioner's jail time back to February 3, 2010. Mitchell-Hoffler testified that, in light of that assumption, he had advised the petitioner that he would receive all of his jail credit and conceded that his advice ultimately was mistaken. At the same time, when he was asked whether the petitioner "was against entering a plea unless he received all of his jail credit," Mitchell-Hoffler

answered, "I wouldn't characterize it as that, no." Mitchell-Hoffler testified that receiving his full jail credit was but one of several concerns of the petitioner. In addition, Mitchell-Hoffler testified that, at the time of the May 5, 2011 plea hearing, the petitioner was exposed to a sentencing enhancement as a persistent serious felony offender.[10]

The petitioner was the second and final witness at the habeas trial. He testified that he had relied on Mitchell-Hoffler's assurance that he would receive credit for all jail time served. He further testified that the reason he agreed to the plea on the kidnapping charge was because he expected to receive "all of" the approximately seven months of jail credit that had accrued between the time of his initial confinement and September 13, 2010. On cross-examination, the petitioner acknowledged that, at the time that he accepted the plea, the trial court advised him that he would receive jail credit dating back to September 13, 2010. The petitioner admitted that, when so apprised by the court, he did not voice any concern or objection.

In its memorandum of decision, the habeas court found the petitioner's testimony to be "unworthy of belief." The court further concluded that the petitioner had not demonstrated that, but for Mitchell-Hoffler's allegedly deficient performance with respect to his jail time credit, he "would have persisted in his request to have a jury decide his fate rather than take advantage of Judge Damiani's proposed disposition." The court thus denied the amended petition for a writ of habeas corpus, concluding that the petitioner had not established the requisite prejudice. See *Hill* v. *Lockhart*, 474 U.S. 52, 59, 106 S. Ct. 366, 88 L. Ed. 2d 203 (1985). The petitioner subsequently filed a petition for certification to appeal to this court, which the habeas court denied, and this appeal followed.

"When the habeas court denies certification to appeal, a petitioner faces a formidable challenge, as we will not consider the merits of a habeas appeal unless the petitioner establishes that the denial of certification to appeal amounts to an abuse of discretion." *Jefferson* v. *Commissioner of Correction*, 144 Conn. App. 767, 772, 73 A.3d 840, cert. denied, 310 Conn. 929, 78 A.3d 856 (2013). To prevail, the petitioner must demonstrate "that the issues are debatable among jurists of reason; that a court could resolve the issues [in a different manner]; or that the questions are adequate to deserve encouragement to proceed further." (Emphasis omitted; internal quotation marks omitted.) *Simms* v. *Warden*, 230 Conn. 608, 616, 646 A.2d 126 (1994).

We conclude that the petitioner has not sustained that substantial burden. To prevail on his claim that Mitchell-Hoffler rendered ineffective assistance of counsel, the petitioner was obligated to demonstrate both deficient performance and resulting prejudice. See

*Strickland* v. *Washington*, 466 U.S. 668, 687, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984). For claims arising out of the plea process, a petitioner "must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Hill* v. *Lockhart*, supra, 474 U.S. 59.

The primary evidence offered by the petitioner to support such a claim was his own testimony at the habeas trial. Significantly, the habeas court did not credit that testimony, deeming it "unworthy of belief." As our Supreme Court has observed, an appellate court "does not . . . evaluate the credibility of the witnesses. . . . Rather, we must defer to the [trier of fact's] assessment of the credibility of the witnesses based on its firsthand observation of their conduct, demeanor and attitude. . . . The habeas judge, as the trier of facts, is the sole arbiter of the credibility of witnesses and the weight to be given to their testimony." (Internal quotation marks omitted.) *Taylor* v. *Commissioner of Correction*, 324 Conn. 631, 643–44, 153 A.3d 1264 (2017); see also *Eastwood* v. *Commissioner of Correction*, 114 Conn. App. 471, 484, 969 A.2d 860 (appellate court does not second-guess findings of habeas court related to credibility of witnesses), cert. denied, 292 Conn. 918, 973 A.2d 1275 (2009). This court, therefore, cannot disturb the habeas court's determination that the petitioner's testimony was not credible.

In addition, the habeas court heard testimony from Mitchell-Hoffler. On direct examination, the petitioner's habeas counsel suggested that the petitioner "was against entering a plea unless he received all of his jail credit." Mitchell-Hoffler disagreed, stating, "I wouldn't characterize it as that, no." Mitchell-Hoffler also testified that the petitioner had "many concerns" about entering a plea and that the jail credit issue was "one of" those concerns.

Furthermore, the record reveals that the petitioner faced a maximum exposure on the kidnapping charge of thirty years incarceration, ten of which were a mandatory minimum, as the petitioner acknowledged during the plea canvass on May 5, 2011. The petitioner faced additional exposure as a persistent serious felony offender. See footnote 10 of this opinion. Moreover, the petitioner faced the prospect of his sentence on the kidnapping charge running consecutively to his eleven year sentence for attempted robbery, as well as the accrual of additional dead time if he proceeded to trial. Pursuant to the plea offer, the petitioner's incarceration would be suspended after he had served ten years on the kidnapping charge, which sentence ran concurrently with the eleven year sentence that he had received weeks earlier on his conviction for attempted robbery. As Mitchell-Hoffler testified at the habeas trial, and as the record plainly reflects, the terms of that offer

effectively meant that the petitioner would not serve one day more than his existing eleven year sentence due to the concurrent nature of the plea.

In light of the foregoing, we agree with the habeas court that the petitioner failed to meet his burden of proving that, but for his allegedly mistaken belief that he was going to receive the additional seven months of jail credit, he would not have accepted that plea offer and would have insisted on going to trial. We therefore conclude that the petitioner has not demonstrated that his ineffective assistance of counsel claim is debatable among jurists of reason, could be resolved in a different manner, or is adequate to deserve encouragement to proceed further. See *Simms* v. *Warden*, supra, 230 Conn. 616. Accordingly, the habeas court did not abuse its discretion in denying the petition for certification to appeal.

The appeal is dismissed.

In this opinion the other judges concurred.

[1] That charge was predicated on allegations that the petitioner made a threatening telephone call to one of his victims while incarcerated.

[2] " '[D]ead time' is prison parlance for presentence confinement time that cannot be credited because the inmate is a sentenced prisoner serving time on another sentence." *Griffin* v. *Commissioner of Correction*, 123 Conn. App. 840, 843 n.3, 3 A.3d 189, cert. denied, 229 Conn. 906, 10 A.3d 522 (2010).

[3] To be clear, the authority of the trial court to award *any* jail credit to the petitioner following his September 13, 2010 sentencing on the violation of probation charge is not at issue in this appeal. We note that this court recently declined to address a similar issue in *Gooden* v. *Commissioner of Correction*, 169 Conn. App. 333, 339–40 n.3, 150 A.3d 738 (2016) ("[w]e leave consideration of whether 'the practice of awarding jail credit when defendants are not statutorily entitled is an illegal ultra vires act' for another day"); see also *Harris* v. *Commissioner of Correction*, 271 Conn. 808, 823, 860 A.2d 715 (2004) (where concurrent sentences are imposed on different dates, simultaneously accrued jail credit can be applied to first sentence but cannot be applied to second sentence).

[4] The jury found the defendant not guilty on the attempted kidnapping charge.

[5] Mitchell-Hoffler represented the petitioner in the criminal proceedings on all four dockets detailed in this opinion.

[6] Approximately fifteen months had passed between the petitioner's confinement on February 3, 2010, and the May 5, 2011 plea hearing.

[7] At the plea hearing, the state proffered the following factual basis for the kidnapping in the first degree charge: "[O]n December 1, 2009, [the petitioner] had been recently released from jail. While he was in jail, apparently he was upset with the behavior of . . . a former girlfriend of his. When he was released from jail, he found her here in Waterbury, abducted her from her apartment, took her in a van at knifepoint. She was blindfolded. [He] [d]rove her around threatening her on a number of occasions. She was able to get free and suffered . . . minor physical injuries as a result of the incident."

[8] "Under *North Carolina* v. *Alford*, 400 U.S. 25, 91 S. Ct. 160, 27 L. Ed. 2d 162 (1970), a criminal defendant is not required to admit his guilt . . . but consents to being punished as if he were guilty to avoid the risk of proceeding to trial. . . . A guilty plea under the *Alford* doctrine is a judicial oxymoron in that the defendant does not admit guilt but acknowledges that the state's evidence against him is so strong that he is prepared to accept the entry of a guilty plea nevertheless." (Internal quotation marks omitted.) *Johnson* v. *Commissioner of Correction*, 285 Conn. 556, 558 n.2, 941 A.2d 248 (2008).

[9] The amended petition also alleged that Mitchell-Hoffler (1) rendered ineffective assistance by failing to conduct a proper investigation, (2) failed to adequately explain the elements of the charges and the evidence in the state's possession, and (3) made "what the petitioner interpreted as threats,"

which rendered his plea unknowing and involuntary. Those contentions are not at issue in this appeal. As the petitioner states in his principal appellate brief, he "is not pursuing these claims on appeal. [He] is pursuing only the claim that he relied on [Mitchell-Hoffler's] erroneous advice concerning presentence confinement credits in deciding to accept the plea offer."

[10] The April 23, 2010 transcript indicates that the state had filed a part B information against the petitioner. At that time, the trial court advised the petitioner that the state was "charging you as a persistent felony offender saying you have a prior felony conviction. That ups the penalties." At the May 5, 2011 plea hearing, the state noted that although the petitioner "does qualify as a persistent dangerous felony offender . . . given the fact that the [plea offer] contemplates a sentence less than he would get if he weren't a habitual offender, it doesn't make any sense to have him plead to it."

———————————————————